1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Fred Norton (CA SBN 224725)
fnorton@nortonlaw.com
Janelle Sampana (CA SBN 336398)
jsampana@nortonlaw.com
Ashley Nakai (CA SBN 340759)
anakai@nortonlaw.com
THE NORTON LAW FIRM PC
299 Third Street, Suite 200
Oakland, CA 94607
Telephone: (510) 906-4900

Attorneys for Plaintiff
Zola Electric International, Ltd.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOLA ELECTRIC INTERNATIONAL, LTD., | Case No. |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **(1) BREACH OF CONTRACT**<br>**(2) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING** |
| ENPHASE ENERGY, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

COMPLAINT

1    Plaintiff ZOLA Electric International, Ltd. ("ZOLA") alleges the following:

2                                                  **PARTIES**

3         1.       ZOLA is the leading emerging market energy technology company, delivering

4    community level electrification through its technology platform.  Through its application of solar

5    energy, storage, and software, ZOLA is dedicated to solving one of the world's greatest problems:

6    energy inequality, particularly in the developing world.

7         2.       ZOLA is, and at all times alleged herein was, a corporation organized under the laws of

8    Mauritius.  ZOLA has a sister company, non-party Zola Electric Labs, Inc., that is registered to do

9    business in the State of California and that has its principal place of business in San Francisco,

10   California.

11        3.       Enphase Energy, Inc. ("Enphase") is a publicly traded corporation in the business of

12   manufacturing and selling microinverters.  Enphase is incorporated in the State of Delaware with its

13   principal place of business in Fremont, California.

14                                  **JURISDICTION AND VENUE**

15        4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because

16   ZOLA is a corporation that is the citizen of a foreign state (Mauritius) with its principal place of

17   business outside the United States, and Enphase is, for purposes of diversity jurisdiction, a citizen of the

18   State of Delaware (where it is incorporated) and of California (where it has its principal place of

19   business).  Further, the amount in controversy exceeds the sum or value of $ 75,000, exclusive of

20   interest or costs.

21        5.       This Court has personal jurisdiction over Enphase because the occurrences,

22   representations, and events upon which this action is based took place in the State of California, Enphase

23   conducts substantial business in this State and District, and a substantial portion of the wrongful conduct

24   alleged herein took place in this State and District.  Moreover, in Section 9.02 of the Master Services

25   Agreement, and in Section 15 of the Joint Development Agreement,  each described in greater detail

26   below, the parties expressly agreed to the jurisdiction and venue of this Court for any dispute concerning

27   the subject matter of this lawsuit.

28        6.       Venue is proper in this Court because, pursuant 28 U.S.C. § 1391, a substantial part of

COMPLAINT

1   the events that gave rise to this cause of action occurred in this District.

2   **FACTUAL BACKGROUND**

3     7.  More than three billion people around the world lack access to reliable and affordable

4   energy and electricity.  In Sub-Saharan Africa, that number is up to 1 billion people.  Demand in this

5   region is projected to increase four-fold by 2040.  The majority of un-electrified households in the

6   developing world use kerosene as the primary source of fuel to light their homes.  Burning kerosene

7   emits a number of gases into the atmosphere, with the most prominent among them being $CO_2$ and

8   black carbon.

9     8.  ZOLA (originally known as Off Grid Electric, Ltd.) began its mission in 2012 by

10   installing affordable energy devices in rural communities.  Today, a little over a decade after it first

11   started, ZOLA has developed the world's first enterprise technology platform for the energy access

12   markets.  ZOLA has provided affordable, reliable, and clean energy to over 2 million people and

13   countless schools, clinics, and businesses in parts of the world that suffer from expensive electric grids,

14   unreliable grids, or no grid access at all.

15     9.  In 2017, Off Grid Electric, Ltd. and Enphase agreed to collaborate on the joint

16   development of a next generation platform that would incorporate Enphase's microinverter technology

17   into the ZOLA platform.  In general, an inverter is necessary to convert direct current (DC) electricity

18   generated by solar panels into the alternating current (AC) electricity typically used by home, business,

19   and individual appliances.  A microinverter is a specific type of inverter that is incorporated into

20   individual solar panels.

21     10.  The goal of the collaboration between Off Grid Electric, Ltd. and Enphase was to jointly

22   productize a next generation microinverter technology that has unique functionality broadly applicable

23   in emerging and developed markets with non-existent or poorly functioning electrical grids.   In

24   particular, this next generation technology would allow for multiple "grid forming" inverters to provide

25   power to the same electrical grid.

26     11.  Conventional inverter technologies can operate as either "grid forming" or "grid tied."  A

27   grid forming inverter imposes both the voltage and frequency and can operate independently from other

28   power sources.  A grid tied inverter's voltage and frequency follows an external power source and

2

1   therefore cannot operate independently in applications such as back-up power in the circumstance of

2   power outage or disturbance.

3         12.     The possibility of having multiple grid forming inverters in the same network allows for

4   the existence of adaptive minigrids that grow as the needs of the community evolve over time.  Such

5   adaptive minigrids are highly desirable in parts of the world where consumption grows quickly or at an

6   uncertain rate.

7         13.     To accomplish their shared objectives, on June 1, 2017, Off Grid Electric, Ltd. and

8   Enphase entered into a Joint Development Agreement ("JDA") and Master Supply Agreement ("MSA")

9   with the goal of jointly developing (1) an Embedded Area Controller ("EAC") Board and Gateway

10   Interface and (2) software to be integrated with a ZOLA Gateway Controller and an Enphase

11   microinverter, named EQ8H.  Both companies would use this shared grid forming micro-inverter

12   architecture.  Off-Grid Electric. Lt. subsequently became Zola Electric, Ltd. and all its rights under the

13   MSA were assigned to Plaintiff ZOLA with Enphase's written agreement.

14         14.     Today, Enphase is a global leader in solar inverter technology, having achieved a market

15   capitalization in excess of $45 billion in late 2022, and the company is still valued in excess of $14

16   billion today.  Back in June 2017, however, Enphase's fortunes looked much different. It was valued at

17   just $64 million, was operating at a loss over multiple quarters, and was in need of outside investment.

18   ZOLA provided that critical investment and support.  This investment and support enabled Enphase to

19   carry out the research and development needed to eventually develop its grid forming inverter.

20         15.     Under the JDA, in exchange for ZOLA's collaboration and investment of over $15

21   million dollars, Enphase agreed to cooperate with ZOLA, meet milestones for the EQ8H's development,

22   and ultimately

23   
24           Enphase will complete the development, testing and certification of the
        EQ8H Micro-inverter, which will meet all the specifications as described
25           in Exhibit A. Upon completion of development, Enphase will supply the
        EQ8H Micro-inverter and Functionally Equivalent products to OGE,
26           along with all associated required connectors and cables, whether
        proprietary or using industry standards. Subject to the supply
27           requirements, exclusivity requirements, and licenses granted herein and in
        the MSA between the Parties, and subject to each Party's obligations of
28           confidentiality, the Foreground Intellectual Property related to the EQ8H
        Micro-inverter will be owned by Enphase

1    16.    In addition to these milestones, the JDA required Enphase to "cooperate in carrying out

2  an active and collaborative development program" with "qualified personnel," and "endeavor reasonably

3  to apply to the Development Program and make available its respective know-how, trade secrets and

4  other Intellectual Property that are useful for their respective activities."  The JDA also required Enphase

5  to deliver a working physical prototype of the EQ8H's interface, firmware, and associated applications

6  to ZOLA.

7    17.    Although ZOLA dedicated countless hours and invested millions of dollars to the

8  development effort, Enphase has not complied with its contractual obligations.  Instead, Enphase failed

9  to meaningfully engage with ZOLA's team, failed to meet its obligations under the JDA, and diverted its

10  resources to developing its own competing product and its own competing platform.  Moreover,

11  Enphase "forked" what was supposed to be a shared, jointly developed platform by creating a firmware

12  code base that was incompatible with ZOLA's platform and ongoing efforts.

13    18.    Consequently, despite ZOLA's extensive and costly efforts to work with Enphase, to this

14  day, more than *seven* years after the parties entered the MSA and JDA, the goal of a shared, grid

15  forming microinverter architecture that can perform reliably in the field where the grid itself is

16  unreliable has not been achieved.

17    19.    JDA milestones were delayed because Enphase failed to address ZOLA's concerns, did

18  not give its engineers enough time to work on the EQ8H microinverter, and provided ZOLA with

19  misleading and contradictory information about the EQ8H microinverter's development.  Enphase

20  violated the JDA by failing to meet the JDA's milestones and failing to address the following serious

21  issues, among others:

22    a.    Disabling power conditioning unit (PCU) power production was

23    unreliable, creating a serious safety hazard;

24    b.    Power conditioning unit (PCU) voltage crashed during grid

25    synchronization;

26    c.    Abnormal voltage crashes;

27    d.    Failure of the PCU to meet output power ratings requirements;

28    e.    Large errors in grid intertie current control; and

4

        f.   Erratic MID switching and wrong AC measurements when the EAC entered a malfunction state.

20.     Furthermore, Enphase interfered with and frustrated the development of the EQ8H's development by, among other things:

        a.   Delivering the microinverters with defective firmware;

        b.   Providing ZOLA with misleading and contradictory information regarding EQ8H's ability;

        c.   Developing a separate, incompatible platform that 'forked" the joint development that the parties had agreed to;

        d.   Reassigning Enphase staff, including the head developer of the EQ8H microinverter, to other projects and labeling the other projects as higher priority;

        e.   Failing to meaningfully engage with ZOLA's engineering team to develop the shared platform;

        f.   Disregarding the severity of system failures raised by ZOLA; and

        g.   Failing to implement software fixes to the EQ8H.

21.     Enphase's unlawful conduct does not stop there.  Instead of fully committing to and contributing to the joint development effort with ZOLA, Enphase dedicated its resources to designing and manufacturing its own grid forming microinverter: the IQ8.  In direct conflict with the express goals of the JDA, the IQ8 is a grid forming microinverter that is incompatible with the ZOLA EAC, frustrating ZOLA's expected benefit from the bargain.

22.     Simultaneous with the JDA, ZOLA and Enphase entered into a Master Services Agreement, or MSA.  Among other provisions, the MSA contains exclusivity provisions intended to protect ZOLA's substantial investment.  Thus, the MSA states:

> In the geographies where [ZOLA] has exclusive rights, Enphase may not provide EQ8H Micro-inverters, or "Functionally Equivalent Products" to any entity other than [ZOLA], for use in any off grid, grid forming, and/or hybrid grid-tied and grid forming/off grid applications.

23.     The MSA confers "exclusive rights" on ZOLA in "Indonesia, Pakistan, Afghanistan,

COMPLAINT

1  Myanmar, and all of Africa (except for Reunion Island, the Canary Islands and the Azores)."

2      24.    The MSA defines "functionally equivalent":

3
4
5
6
7
8
9
    (i) as to the EQ8H Micro-inverter, a grid forming photovoltaic and battery microinverter in a single phase service; and (ii) as to the ASIC, any ASIC that allows use of the EAC, in connection with a grid forming, photovoltaic and/or battery micro-inverter in a single-phase service. Differences in warranty term, price, and other business terms are not considered in determining whether products are Functionally Equivalent. A product that replaces a discontinued product or model is presumptively considered Functionally Equivalent to the product it replaces. The combination of the Enphase ACM or Enphase ACB with capacity of less than 1 0kWh for single-phase, with an EQ8H Micro-inverter (or Functionally Equivalent product) would be considered Functionally Equivalent for purposes of the limited exclusivity obligations of the Parties.

10
    25.    The MSA also defines "grid forming":

11
12
13
14
15
16
    photovoltaic or storage device that is intended to connect to a (single phase) AC system, that can self-synchronize to other AC energy production resources and modulate its energy transfer in real time to achieve a voltage and frequency that are within normal grid specifications, while sharing appropriately the energy needs with other devices and providing black start capabilities; Grid Forming excludes inverters that function only when connected to the grid and offers no off-grid or islanding capability. Any technology that allows the photovoltaic or storage devices to operate independently from the grid is considered Grid Forming.

17      26.    In an amendment to the JDA, dated April 6, 2022, the parties agreed that the ten-year

18  exclusivity period would begin upon the occurrence of a Launch Release Date, a comprehensively

19  defined term that broadly corresponds to Enphase satisfying its obligations under the JDA by delivering

20  satisfactory versions of microinverter firmware and EAC software in accordance with all of the

21  requirements of the JDA Scope of Work.  Once again, Enphase has not satisfied those obligations.

22      27.    The intent and effect of these carefully constructed provisions was to prevent Enphase

23  from selling the EQ8H—or any functionally equivalent product that had grid forming capability—in any

24  of the restricted territories, to anyone other than ZOLA, for a full ten years after Enphase delivered on its

25  promises under the JDA.  That would properly motivate Enphase to follow through on the JDA and

26  ensure that ZOLA could capitalize on its substantial investment in the part of the world where it has

27  always been focused.  At the same time, Enphase would benefit by selling its EQ8H microinverters to

28  ZOLA at scale in a massive emerging market.

COMPLAINT

1    28.    Enphase has nonetheless willfully breached the letter and the spirit of these provisions.

2    29.    Both ZOLA and Enphase agree that the Launch Release Date has not occurred.

3  However, as set forth above, through its willful violations of the JDA, Enphase has wrongfully

4  prevented the occurrence of the Launch Release Date condition, such that the Launch Release Date must

5  be deemed to have occurred, triggering the exclusivity period of the MSA.  Moreover, to the extent that

6  the MSA makes the exclusivity clause contingent upon ZOLA purchasing minimum quantities of

7  Enphase inverters, that condition is also excused by Enphase's frustration of the purpose of the contract

8  through its failure to fulfill its obligations under the JDA to develop and deliver its portion of a

9  functioning, next-generation grid forming microinverter technology.

10    30.    Nonetheless, despite the MSA's express exclusivity provisions, Enphase has entered the

11  restricted markets with Enphase's very own IQ8 microinverter.  Enphase markets and sells the IQ8

12  globally, and touts its valuable "grid forming" features prominently on its website and in product

13  descriptions, calling the IQ8 "the industry's first microgrid forming, software-defined microinverters

14  with split-phase power conversion capability to convert DC power to AC power efficiently."  In a

15  cynical—and ineffective—effort to evade the restrictions of the MSA, however, Enphase is selling the

16  IQ8 in ZOLA's exclusive territories with the grid forming features turned off.

17    31.    Despite that ploy, Enphase is in breach of the MSA, as the IQ8 inverters it sells in the

18  restricted territories have "off-grid or islanding *capability*" as the MSA provides, even if Enphase has

19  arbitrarily restricted that capability.

20    32.    Enphase has conceded the significant value of the JDA and MSA to ZOLA and the

21  significant benefit to Enphase of avoiding those obligations.  For example, in early 2023, long before

22  any litigation had been threatened, ZOLA's CEO, Bill Lenihan sought to renegotiate the MSA and JDA

23  to refocus the development efforts, obtain a $15 million investment in ZOLA, and allow Enphase to sell

24  its products in South Africa with ZOLA support.  On March 21, 2023, Adam Hinckley of Enphase wrote

25  directly to Lenihan with a counter-proposal, that the parties would terminate the JDA and MSA,

26  Enphase would be relieved of all territorial restrictions in the MSA, and Enphase would pay ZOLA $10

27  million to exit the two agreements.  Recognizing that a $10 million buyout significantly

28  undercompensated ZOLA, ZOLA declined.  Approximately six months later, Enphase announced the

COMPLAINT

1 IQ8 and then began violating the exclusivity term.

2       33.     By delaying the introduction of a reliable next-generation microinverter technology that

3 could serve markets with non-existent or poorly functioning electrical grids, Enphase has caused untold

4 damage to the people of Africa and other parts of the world where such technology is badly needed.

5       34.     In addition, Enphase's breaches of the JDA have caused ZOLA tens of millions of dollars

6 in damages by, among other things, damaging ZOLA's reputation with its customers and customer

7 prospects, massively delaying the launch of Zola's flagship product, slowing and blocking the

8 development of the shared grid forming microinverter platform, and squandering ZOLA's substantial,

9 multi-million-dollar investment in that effort.

10       35.     Enphase's past and threatened breaches of the MSA have wrongfully arrogated to

11 Enphase the benefits of selling grid forming inverters in the territories that are exclusively ZOLA's,

12 causing ZOLA damage, denying it the opportunity to earn profits, and unjustly enriching Enphase.  As a

13 remedy for those additional breaches, ZOLA seeks damages, disgorgement, a declaration of its rights,

14 and an injunction against Enphase's sales of the IQ8 and similar grid forming inverters in the exclusive

15 territories.

16 **FIRST CAUSE OF ACTION**

17 **Breach of JDA**

18       36.     ZOLA realleges and incorporates by reference all paragraphs previously alleged here.

19       37.     At all times relevant to this complaint, ZOLA has had a valid contract with Enphase,

20 specifically the JDA.

21       38.     Since agreeing to the JDA, ZOLA has invested at least $15 million dollars and countless

22 hours into the development of the EQ8H microinverter and related software.  In exchange for ZOLA's

23 time and capital and collaboration, Enphase was and is required to meet JDA milestones, collaborate

24 with ZOLA, and deliver the EQ8H as specified by the contract.  Enphase has not done so.

25       39.     Instead, Enphase breached the JDA by failing to achieve the milestones set forth in the

26 agreement; failing to complete the development, testing, and certification of an EQ8H microinverter that

27 meets the JDA's specifications; failing to address defects in the EQ8H; refusing to provide adequate and

28 necessary staff and resources to the collaboration; diverting resources to Enphase's competing IQ8;

8

1  forking the platform such that aspects of ZOLA's and Enphase's technology became incompatible; and

2  failing to fix documented failures and to implement necessary fixes reasonably requested by ZOLA.

3      40.    ZOLA has performed all conditions, covenants, and promises required by the JDA except

4  as to those conditions, covenants, and promises that have been excused as a result of Enphase's own

5  conduct.

6      41.    As a direct and proximate result of Enphase's breaches of its contractual duties under the

7  JDA, ZOLA has suffered, and continues to suffer, damages that will be proven at trial but are in the tens

8  of millions of dollars.

9      42.    ZOLA is also entitled to specific performance of Enphase's contractual obligations under

10 the JDA.

11 **SECOND CAUSE OF ACTION**

12 **Breach of MSA**

13     43.    ZOLA realleges and incorporates by reference all paragraphs previously alleged here.

14     44.    At all times relevant to this complaint, ZOLA has had a valid contract with Enphase,

15 specifically the MSA.

16     45.    Since agreeing to the MSA, ZOLA has invested at least $15 million dollars and countless

17 hours into the development of the EQ8H microinverter and the related software.  In exchange for

18 ZOLA's time and capital, and agreement to sell Enphase certain products, Enphase was and is required

19 to comply with the MSA's exclusivity provisions.  Enphase has not done so.

20     46.    Instead, Enphase breached the MSA by seeking to frustrate the occurrence of the Launch

21 Release Date, seeking to evade the exclusivity provisions by arbitrarily disabling features on the IQ8

22 that it actively promoted in other markets, and selling its IQ8 in the restricted territories.

23     47.    Enphase also breached the MSA's exclusivity provisions by selling its IQ8 in the South

24 African market.  The IQ8 is grid forming capable and therefore functionally equivalent to ZOLA's

25 EQ8H microinverter.

26     48.    ZOLA has performed all conditions, covenants, and promises required by the MSA

27 except as to those conditions, covenants, and promises that have been excused as a result of Enphase's

28 own conduct.

1    49.    As a direct and proximate result of Enphase's breaches of its contractual duties under the

2  MSA, ZOLA has suffered, and continues to suffer, damages that will be proven at trial but are in the

3  tens of millions of dollars.

4    50.    ZOLA is also entitled to specific performance of Enphase's contractual obligations under

5  the MSA, including, but not limited to an injunction precluding Enphase from selling the IQ8 or any

6  other grid forming or functionally equivalent product in the restricted territories.

7                                **THIRD CAUSE OF ACTION**

8                **Breach of Implied Covenant of Good Faith and Fair Dealing, JDA**

9    51.    ZOLA realleges and incorporates by reference all paragraphs previously alleged here.

10    52.    ZOLA and Enphase entered into a valid contract, specifically the JDA.

11    53.    Under the JDA, Enphase is subject to an implied covenant of good faith and fair dealing,

12  pursuant to which Enphase may not take any action to unfairly frustrating ZOLA's right to receive the

13  benefits of their agreement.  Enphase has violated this obligation.

14    54.    Enphase unfairly and improperly prevented ZOLA from receiving the benefits of the JDA

15  by undermining and neglecting the joint development of the EQ8H grid forming microinverter in favor

16  of Enphase's own, competing, incompatible IQ8 grid forming micro-inverter.  Enphase's wrongful

17  conduct includes, but is not limited to, sabotaging the JDA by:

18              a.  Delivering a microinverter with defective firmware;

19              b.  Reassigning Enphase staff, including the head developer of the EQ8H

20                 microinverter, to other projects and labeling the other projects as higher

21                 priority;

22              c.  Developing a separate, incompatible platform that 'forked" the joint

23                 development that the parties had agreed to

24              d.  Failing to meaningfully engage with ZOLA's engineering team to develop

25                 the EQ8H; and

26              e.  Failing to implement software and hardware fixes to the EQ8H.

27    55.    All conditions required for Enphase's performance under the MSA have occurred or are

28  excused by Enphase's wrongful conduct.

                                        10

                                   COMPLAINT

56.     As a direct and proximate result of Enphase's breaches of its duty of good faith and fair dealing, ZOLA has suffered, and continues to suffer, damages that will be proven at trial but are in the tens of millions of dollars.

## FOURTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing, MSA

57.     ZOLA realleges and incorporates by reference all paragraphs previously alleged here.

58.     ZOLA and Enphase entered into a valid contract, specifically the MSA.

59.     Under the MSA, Enphase is subject to an implied covenant of good faith and fair dealing, pursuant to which Enphase may not take any action to unfairly frustrating ZOLA's right to receive the benefits of their agreement.  Enphase has violated this obligation.

60.     Enphase unfairly and improperly prevented, and continues to prevent, ZOLA from receiving the benefits of the MSA by sabotaging the efforts of the JDA such that the Launch Release Date condition is not met, is met at a later date, or is met only under circumstances that are less favorable for Enphase.  In addition, Enphase has unfairly and improperly attempted to circumvent the MSA's exclusivity term by arbitrarily and spitefully deactivating the IQ8's admitted grid forming capability.

61.     As a direct and proximate result of Enphase's breaches of its duty of good faith and fair dealing, ZOLA has suffered, and continues to suffer, damages that will be proven at trial but are in the tens of millions of dollars.

62.     All conditions required for Enphase's performance under the MSA have occurred or are excused by Enphase's wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, ZOLA prays for relief as follows:

1.     A judgment that Enphase has breached its contracts with ZOLA law and breached the implied covenant of good faith and fair dealing in violation of California law.

2.     Damages in an amount to be proven at trial.

3.     Disgorgement of revenues obtained by Enphase from the sale of the IQ8 and functionally

11

COMPLAINT

1 similar products in the restricted territories.

2    4.     Attorneys' fees and costs in this action, including expert witness fees, as appropriate.

3    5.     Accrued and accruing pre- and post- judgment interest.

4    6.     An order compelling specific performance of Enphase's contractual obligations under the

5     MSA and JDA and joining violations of those contracts, including, without limitation,

6          A.     Requiring Enphase to deliver the EQ8H microinverter as specified in the JDA;

7          B.     Declaring ZOLA's rights under the MSA and the JDA;

8          C.     An order enjoining Enphase from selling the IQ8 microinverter or any other

9          functionally equivalent product to any party other than ZOLA in the restricted

10          territories for the next ten years; and

11          D.     Accrued and accruing pre- and post- judgment interest.

12    7.     Any other relief the Court deems just and proper.

13 **JURY DEMAND**

14 Plaintiff demands a jury trial on all claims so triable.

15 Dated:  July 17, 2024                  Respectfully submitted,

16                                      THE NORTON LAW FIRM

17                                      */s/ Fred Norton*

18                                      Fred Norton
                                     Janelle Sampana

19                                      Ashley Nakai

20                                      Attorneys for

21                                      Zola Electric International, Ltd.

22

23

24

25

26

27

28

12